[Scoggins v. Atlantic & G. P. Cement Co.]

# Scoggins *v.* Atlantic & G. P. Cement Co.

## *Injury to Servant.*

(Decided November 14, 1912.   60 South. 175.)

1. *Master and Servant; Injury to Servant; Burden of Proof.*—One suing under the Employer's Liability Act for the negligent death of an employee, has the burden of showing that the decedent was an employee, and that the employer was liable for the wrongful act or negligence which caused the death.

2. *Same; Independent Contractor; Injury to Third Person.*—Where a veranda in the course of construction by an independent contractor was not necessarily dangerous, if proper care was exercised in its erection, and any negligence in the prosecution of the work was merely in the mode and manner in which the independent contractor, or his employees, were performing the work, the owner of the veranda was not liable for injuries caused by the collapse of the veranda.

3. *Same.*—Where work is left to an independent contractor who worked according to his own methods and not under the direction of the owner, the servants doing the work are employees of the independent contractor; and this principle obtains and applies to one who is a general servant of the owner, but who for the purposes of the particular work becomes an employee of the contractor.

4. *Same; Dangerous Premises; Duty to Public.*—Where one owes a duty to the public to keep streets in a safe condition, such one cannot escape liability by committting the work to an independent contractor.

5. *Same; Liability to Owner.*—Where the work is instrinsically dangerous, however carefully performed, the owner is liable for damages arising from the negligence of the workmen doing the work, although the owner of the premises employs an independent contractor to perform such intrinsically dangerous work.

6. *Same; Third Person; Liability; Dangerous Premises.*—An owner or manager, for whose own benefit or on whose account business is carried on, is responsible to third persons for negligence of those carrying on the business, whether those so employed are working on wages or by contract, or whether they are directly employed by the owner, or by a manager having the superintendence of the property.

7. *Death; Contributory Negligence.*—In the absence of any wanton or willful act on the part of the defendant causing the death of the decedent, the contributory negligence of the decedent proximately contributing to or causing death, defeats a recovery.

8. *Negligence; Dangerous Premises.*—Where one was sheltered from the rain, but left his shelter and sought shelter under a veranda being constructed, and he was warned not to do so be-

[Scoggins v. Atlantic & G. P. Cement Co.]

cause of the danger of the veranda collapsing and there was no relation of employer and employee between him and the owner of the veranda, such owner was not liable for injuries caused by the collapse of the veranda.

9. *Same.*—It is a cardinal principle of law that one must so use his own property as not to injure another.

10. *Same.*—One who invites another to come on his premises on a business in which both are interested, must take care that his premises, and appliances incident to the use thereof, are safe, or give warning of any danger; but where a stranger comes as a guest, or as a bare licensee, the owner owes him no duty except to warn him of anything in the nature of a trap on the premises.

11. *Same; Licensee; Liability.*—One going on the premises of another on business of his own, not connected with the business actually or apparently carried on there, is a licensee to whom the owner or occupant of the premises owes no other duty than to refrain from putting traps in his way.

12. *Same; Trespasser.*—A landlord need not warn trespassers of hidden dangers on his premises, nor protect them by fences from injuries resulting from his act or those of a third person; and unless it is invited or enticed thereon, this rule applies even to a child of tender years.

13. *Landlord and Tenant; Dangerous Premises; Liability.*—A landlord does not warrant the condition of the premises, unless by special contract to that effect, and the doctrine of caveat emptor applies; but if there are defects known to the landlord, rendering the place unsafe, and he conceals these facts from the tenant, he is liable to the tenant for resulting damages, if the tenant is ignorant thereof.

14. *Appeal and Error; Harmless Error; Matters Not Affecting Result.*—Where a plaintiff is not entitled to recover under any of the issues or the evidence without changing his cause of action and his evidence, errors committed in the trial are not prejudicial to him.

15. *Same; Pleading.*—Where there are other counts raising the same issue and supported by the same evidence, as attempted to be raised by the count to which demurrers were sustained, any error in sustaining such demurrers was not prejudicial.

APPEAL from St. Clair Circuit Court.

Heard before Hon. J. T. BLACKWOOD.

Action by Lee Scoggins, administrator, against the Atlantic & Gulf Portland Cement Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The first count alleges in substance that on the 6th day of August, 1909, the defendant was constructing its plant to be used by it in the manufacture of cement, and as a part of said plant the defendant had construct-

ed a large building of lumber at its plant near Ragland, Ala., and that on said day, while the plaintiff's intestate was in the service or employment of the defendant, and engaged in and about the said business of defendant, while under the veranda of said building, said veranda broke and gave way, and as a proximate consequence thereof crushed and otherwise injured plaintiff's intestate, so that he died, and his death was caused by a defect in the ways, works, plant, machinery, etc. The second count was like unto the first. The third count alleges that the veranda was so weak, insecure, and otherwise defective, and was so negligently constructed by the defendant, who was the owner thereof, as to be insecure and unsafe. The fourth count alleges the negligent construction, with knowledge of such defect on the part of the defendant, and the allowing of it to remain in such condition. The sixth count alleges that at the time of said injuries on said day plaintiff was in the employment and service of the defendant on the premises, and was not a tresspasser, with the allegation of injury as alleged in the fourth count. The pleas were contributory negligence, in that at the time of the injury plaintiff well knew, when he entered or sought shelter under said veranda, the danger of this position as alleged in the complaint; that the pillars under same were only for temporary purpuses, which was well known to plaintiff's intestate, or was such that a man of ordinary prudence and care would not have risked himself in such a position under the circumstances and conditions as alleged in the complaint. The tendencies of the evidence sufficiently appear from the opinion.

C. B. POWELL, for appellant. Pleas three and four were not good pleas of contributory negligence and

were subject to the demurrers.—*Brent v. Baldwin*, 160 Ala. 635; *Hudgins v. Sou. Ry. Co.*, 159 Ala. 189; *Sou. Ry. v. Stewart*, 153 Ala. 132; *Osborn v. Ala. S. & W. Co.*, 135 Ala. 571. Counts three, four, ten and twelve were good counts and the court erred in overruling demurrers thereto.—*Brent v. Baldwin, supra*. The president of a corporation cannot become an independent contractor with his own corporation and the corporation would still be affected with notice if the president knew of the dangers of the premises.—*Brent v. Baldwin, supra;* Thompson on Corp., section 6278; 16 A. & E. Ency. of Law, 187; 168 Ill. 139. There was evidence tending to sustain each of counts two, five, eight, nine and eleven and the court erred in giving the affirmative charge as to those counts.—*Haden v. Troy*, 155 Ala. 270; *McCormack Co. v. Lowe*, 151 Ala. 313; *L. & N. R. R. Co. v. Perkins*, 152 Ala. 162. The falling of the structure raises the presumption of negligence.—6 Mayf. 667 and 668. The court erred in giving charges nine and twelve requested by defendant.—*Sou. Ry. Co. v. Shelton*, 136 Ala. 131; *Huggins v. Sou. R. Co., supra*.

THOMAS J. WINGFIELD, and JAMES A. EMBREY, for appellee. Error not assigned will not be considered. —*Cunningham v. Armour Packing Co.*, 109 Ala. 421. Assignments not insisted on will not be considered.— *Western Ry. Co. v. Russell*, 144 Ala. 142. Although pleadings are subject to demurrer, yet if the demurrer fails to point out the defect it is properly overruled. *Daniels v. Hamilton*, 52 Ala. 105. The giving of the affirmative charge will not be reviewed where the record does not purport to set out all the evidence.— *Wolff v. DeLarge*, 150 Ala. 445. Where a plaintiff cannot sustain his action in its present form and under the evidence without a change of action and evidence

he cannot complain of errors committed by the trial court.—*Bowling v. M. & M. R. R. Co.,* 128 Ala. 556; *Bienville W. S. Co. v. Mobile,* 27 South. 781.

MAYFIELD, J.—This action was brought by the appellant, against the appellee, under the Employer's Liability Act, to recover damages for the wrongful death of plantiff's intestate.

Intestate was killed by the veranda of a clubhouse or boarding house falling upon him. He had gone under the veranda, of his own volition, with a friend —a brother-in-law of his—to take shelter from a rain. The veranda, at that time in process of construction, was not covered; but some planks or lumber which had been placed on the veranda to be used in the construction, formed a shelter from the rain. The veranda was only temporarily braced or propped. The deceased was not engaged in the work of building the veranda, but was employed, as foreman of a squad of men, in building a road near the place of the accident, and went there with his men only to get out of the rain. The men under him, and the carpenters who were engaged in work on the veranda, had gone into a tent, a servant's house, and a barn to get out of the rain. The deceased and his friends remained in these places for a while, for shelter, and then voluntarily retired to shelter under the veranda. The insecure condition of the veranda—that is, that it was only temporarily propped, and was then under process of construction—was perfectly obvious to the deceased; and the undisputed evidence is that he was warned of its condition and danger, but nevertheless heedlessly took the chances, and was killed in consequence of his own negligence.

The defendant corporation was engaged in the business of manufacturing cement. For this purpose it had

contracted for the erection of a plant at Ragland, Ala. The evidence also shows that the contractor, one W. B. Shaffer, was erecting this clubhouse or boarding house 2½ miles from Ragland, for the use of the employees and the officers of the company. While the evidence may be said to be in conflict as to whether this house, when completed, would be the property of the defendant, it is undisputed that it was being erected by Shaffer, and not by the defendant. The evidence undisputedly shows that Shaffer was either acting wholly for himself, or, as an independent contractor, for the defendant. The defendant did not own the surface right to the land upon which the house in question was being erected, but merely the mineral right thereto.

The trial court gave the affirmative charge for the defendant as to each count of the complaint upon which the trial was had. There was no evidence tending to show wanton negligence or willful injury. The pleas of contributory negligence were each sufficient, and were proven without conflict, and upon this theory the court cerrectly gave the affirmative charge for the defendant.

The action being under the Employer's Liability Act, it was of course incumbent on the plaintiff to allege and prove a case under that statute. The proof entirely failed, in that it did not show that deceased was an employee of the defendant; nor did any of the evidence show, or tend to show, that the defendant was liable for any wrongful act or any negligence which may have caused the death of plaintiff's intestate.

There being no evidence of any wantonness or willful act, on the part of any one, causing the death, and the undisputed evidence showing that intestate's own negligence proximately contributed to, or caused, his death, he, of course, could not recover. Even if it

[Scoggins v. Atlantic & G. P. Cement Co.]

could be said that the work of building or repairing this house was being done for the defendant, it is without dispute that it was being done by an independent contractor.

Again, the work or undertaking being by no means necessarily dangerous, if proper care were exercised in its execution, any negligence in its prosecution (if any such there was) was merely in the mode and manner in which the contractor or his agents or servants were performing the work; and for this reason the defendant was not liable.

If it could be said that deceased was an employee of the defendant (but the evidence is overwhelming to the effect that he was not), the evidence is without dispute that he was not engaged in the master's service at the time of the injury; that he was under no duty or business obligation to be at the place of the injury, but was there by his own voluntary wish. But he was not engaged in that work, nor in any business of the master which rendered it necessary or proper for him to go under the veranda. There were other shelters at the place, shelters which were know to him, which he had used, and which he left voluntarily to assume, after being warned not to do so, the dangerous post in question. It would be little short of an outrage of justice to allow plaintiff to recover in this action, even upon his own evidence.

The law as to the liability of an independent contractor, and of the principal or owner, has been well stated by the English and American courts as follows: "Where the owner of premises employs an independent contractor for an operation to be performed on them, the contractor, and not the owner, is liable for damages arising from negligence of the workmen in carrying on the operation; but where a person engaged

a contractor to perform a work which is in itself unlawful, and damage is caused by the operations, although carried out in a manner which, if the work were lawful, would be proper, the act causing the damage is considered as the direct act of the primary employer, and he is liable accordingly."—19 Eng. Rul. Cas. 168. The American authorities are in conflict on this subject. See note 1 to 19 Eng. Rul. Cas. 186. Alabama seems to follow the English rule. See *Chattahoochee & Gulf R. Co. v. Behrman,* 136 Ala. 510, 35 South. 132; *Alabama Midland R. Co. v. Martin & Bros.,* 100 Ala. 511, 14 South. 401; *Scarborough v. Ala. Midland R. Co.,* 94 Ala. 499, 10 South. 316; *Rome & D. R. Co. v. Chasteen,* 88 Ala. 591, 7 South. 94. A mill proprietor owes the duty to the servant of an independent contractor, who is placing machinery in the mill, to keep his premises in a reasonably safe condition. —*Dallas Mfg. Co. v. Townes,* 148 Ala. 146, 41 South. 988.

Where a certain work is let to an independent contractor, who works according to his own methods, and not under the directions of the master, those who work under such independent contractor are his servants, and not the servants or employees of the master; and this principle applies even to one who is a general servant of the master, but who for that particular work becomes the servant of the contractor.—*Dallas Co. v. Townes, supra.* Servants of an independent contractor and servants of the principal by whom the contractor is employed are not fellow servants, although they work side by side in common employment, if they are not under the control of a common master.—*Lookout Mountain Co. v. Lea,* 144 Ala. 169, 39 South. 1017.

Where one party owes a duty to the public to keep a street or a highway in safe condition, it cannot es-

cape liability by committing the work to an independent contractor.—*Mont. St. Ry. Co. v. Smith,* 146 Ala. 316, 39 South. 757.

There are two exceptions to the general rule as to the nonliability of the principal for the acts of an independent contractor; the first being where the work is intrinsically dangerous, however skillfully performed, and, second, where the principal owes certain duties to third persons or the public.— *Mont. St. Ry. Co. v. Smith, supra.* The general rule is that all parties participating in a wrongful act, directly or indirectly, whether as principals, or agents, or both, are jointly and severally liable in damages for the wrong, where injury results; and it is upon this principle that the owner or proprietor is liable for the act of an independent contractor, where the contract itself calls for the doing of an act causing the injury and damage, and that act is done in pursuance of the contract.—*Brent v. Baldwin,* 160 Ala. 635, 49 South. 343.

The rule as to liability as for the maintenance of "dangerous premises," "pitfalls," "death traps," etc., has been well stated by the Supreme Court of Massachusetts, and by this court, as follows: "The general principle to be extracted from the cases, in regard to the use of real property, is that the owner of real estate, either absolutely or for the time being, he who has the management and control and takes the benefit and profit of the estate, he at whose expenses and on whose account the business is conducted, shall be responsible to third persons for the carelessness, negligence, or want of skill of those who are carrying on and conducting the business by which they are damnified; and this, whether the persons thus employed and engaged are working on wages or *by contract,* and whether they are employed directly by the principal, or by a steward,

agent, or manager having the superintendence of his estate." Several principles of law seem, to be referred to as the source of this responsibility. One is that he who does an act by another does it himself. Though not the work of his hands, it is the result of his will. His mind, his intent, and his purposes are the efficient cause of the operations conducted by others. It is therefore he who, in the conduct of his own business, causes the damage complained of, and it is of him that redress shall be obtained. "Another well-known principle is that every one shall  so use his own property as not, in the management of it, to hurt that of another. Having the power to determine what agents shall be employed, what business shall be carried on, upon the estate of which he has either the ownership or the enjoyment and possession, it is alike the dictate of justice and public policy that he shall be responsible for the conduct of those whom he may employ or dismiss, and whose movements he has the power to direct."— *Earl v. Hall*, 2 Metc. (Mass.) 357, 358. "A person who invites another to come on his premises upon a business in which both are concerned is bound to take care that his premises and all appliances provided by the owner as incident to the use of his premises are safe for that other person to come upon and use them as required, or else to give due warning of any danger to be avoided. But where the stranger comes as a guest, or as a bare licensee, the owner of the premises is only bound to warn him of anything in the nature of a trap upon the premises."—19 Eng. Rul. Cas. 60.

A person who goes upon the premises of another on business of his own, not connected with the business actually or apparently carried on there, is a mere licensee, to whom the owner or occupant of the premises owes no further duty than to refrain from putting

[Scoggins v. Atlantic & G. P. Cement Co.]

traps or pitfalls in his way, and if injured by reason of a defect therein, which was negligently permitted to exist, he cannot recover.—*Plummer v. Dill,* 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463; *Hart v. Cole,* 156 Mass. 475, 31 N. E. 644, 16 L. R. A. 557; *Ala. Great Southern R. Co. v. Crocker,* 131 Ala. 584, 31 South. 561; *Ala. Steel & Wire Co. v. Clements,* 146 Ala. 259, 40 South. 971; *Bridgeport Water Co. v. Goodwin,* 132 Ala. 533, 31 South. 490; *Alabama G. S. R. R. v. Guest,* 136 Ala. 348, 34 South. 968. A landowner is not required to warn trespassers of hidden or secret dangers on his premises, nor to protect them, by fences or otherwise (apart from statute), against every injury that may result from his acts or from those of a third person; and this applies even to a child of tender years, unless it is invited or enticed thereon.—*Spinner v. N. Y. Central & Hudson River R. Co.,* 67 N. Y. 153, 156; *Mugford v. Boston & Maine R.,* 173 Mass. 10, 52 N. E. 1078; *Brady v. Prettyman,* 193 Pa. 628, 44 Atl. 919; *May v. Poindexter,* 98 Va. 143, 34 S. E. 971, 47 L. R. A. 588. A landlord, who rents or leases a house to a tenant, does not warrant the condition of the premises, unless by special contract to that effect. The doctrine of caveat emptor applies, yet if there are defects known to the owner rendering the premises unsafe, either from unseen dangers or from infection, the owner who conceals or fails to communicate such knowledge to the tenant, who is ignorant thereof, is liable to the tenant for damages resulting therefrom.—*Finney v. Steele,* 148 Ala. 197, 41 South. 976, 6 L. R. A. (N. S) 977, 12 Ann. Cas. 510. The owner of premises upon which persons come by invitation must maintain such premises in a reasonably safe condition for the contemplated uses and purposes for which the invitation was extended; but the owner owes no duty to keep the

premises safe as to mere trespassers. They assume the risk and danger, and can only recover for injuries wantonly inflicted.—*Sloss Co. v. Tilson,* 141 Ala. 152, 37 South. 427.

There was no phase of the evidence that brought plaintiff's case within these rules. It was not shown that the work being done was done by the defendant, or done for defendant's use. While done on land to which it owned the mineral right, it was not undertaking to control the use of the surface. Moreover, there was no evidence that the building was a "death trap." It was under process of construction; and, at most, the negligence was the mere failure to sufficiently prop or support the structure while it was being erected.

From what we have said above, it is apparent that it is unnecessary to treat seriatim the many assignments of error. If errors were committed, it affirmatively appears from this record, that they were without possible injury to the plaintiff. It affirmatively appears that he would not and could not have been entitled to recover under any of the issues or the evidence, without entirely changing his cause of action and his own evidence.

The various rulings have been examined, and we are not prepared to say that there was error; but it is certain that there is no reversible error. If there was error in sustaining demurrers to any count of the complaint, there were other counts which raised practically the same issues attempted to be raised by the counts to which demurrers were sustained; and the same proof would have been admissible, and have authorized a recovery under each. The record has been carefully examined, and we find no reversible error.

Affirmed. All the Justices concur.