## THE OMSK. YANNOSKY v. LANE et al. LANE v. NORFOLK SHIP-BUILDING & DRY DOCK CORPORATION.

(Circuit Court of Appeals, Fourth Circuit. April 6, 1920.)

Nos. 1756, 1757.

1. **Shipping ⬰84(3)—Ship liable for injury to repairer's workman by falling through open and unguarded hatchway.**

A ship which agreed to furnish lights for workmen making repairs *held* not liable for injury to a workman by falling down an open hatchway, on the ground that the place was unlighted, where it furnished all the lights asked for by the contractor, and was not notified that some of them had temporarily gone out, but liable for negligently leaving the hatchway open and unguarded at night.

2. **Master and servant ⬰121(8)—Master liable for failure to furnish employé safe place to work.**

A contractor for making repairs on a ship *held* liable for injury to a workman by falling through an open hatchway near the foot of a stairway at night, where its foreman sent the man down the stairway, knowing that the hatchway was open and the deck at the time unlighted.

3. **Shipping ⬰84(3)—Duty to keep ship safe for workmen making repairs.**

When a ship contracted for repairs, it assumed the obligation to keep all parts of the ship under its control reasonably safe for the employés of the contractor, and it could not relieve itself of the duty by delegating it to another, who was discharging cargo.

4. **Master and servant ⬰280—Evidence held not to show assumption of risk.**

Evidence *held* to sustain a finding that an employé engaged in making repairs on a ship, who was negligently sent in the dark near an open and unguarded hatchway, through which he fell, did not assume the risk.

Appeals from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Suit in admiralty by Sewell F. Lane against the steamship Omsk, Edmund Yannosky, claimant, and the Norfolk Shipbuilding & Dry Dock Corporation. Decree for libelant against the steamship alone, and claimant and libelant appeal. Modified.

W. W. Starke, of Norfolk, Va., (L. D. Starke, of Norfolk, Va., on the brief), for libelant.

Edward R. Baird, Jr., of Norfolk, Va. (Baird & White, of Norfolk, Va., and Victor E. Gartz, of New York City, on the brief), for the Omsk.

Leon T. Seawell, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for Norfolk Shipbuilding & Dry Dock Corporation.

Before KNAPP and WOODS, Circuit Judges, and WATKINS, District Judge.

⬰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WOODS, Circuit Judge.   On February 26, 1918, the Russian steamship Omsk was moored at a wharf in the city of Norfolk, where she had been under repair by the Norfolk Shipbuilding & Dry Dock Corporation.   The United States Shipping Company was discharging her cargo of cotton.   The work of repair had been completed, and the workmen of the shipbuilding corporation, under the direction of its employé, J. C. Adams, were about to take out the bulkheads used in repairing.   To get to the place of work, it was necessary for the workmen to go through an opening on the upper deck down a temporary stairway to the lower deck.   On this deck, very near the place of work, was an open hatch.   The place was usually well lighted, but on the evening of February 26, when Adams directed the workmen to go down, the usual electric lights were out.   On the stairway there was very little light, and at the place of work hardly any.   Sewell F. Lane, libelant, was one of the workmen directed to descend and engage in the work of removing the bulkheads.   While waiting at the foot of the stairway for other workmen, he moved a few steps, fell through the open hatch, invisible to him, and was severely injured.

The alleged negligence on account of which he seeks to recover was in the failure to have the place of work lighted, and in leaving open and unguarded the hatch through which he fell.   The District Court held the ship alone negligent and liable.   The ship alleges that, if there was any negligence, it was that of the shipbuilding company, and, further, that the libelant should not recover, because he assumed the risk, and was guilty of contributory negligence.   The libelant assigns error, in that the District Court did not hold the shipbuilding company also negligent and liable.

[1, 2]   There can be no question that there was negligence in not having the place of work adequately lighted; but we are unable to agree that this was the negligence of the ship.   It is true that the ship had agreed to furnish the lights, but the testimony is clear beyond doubt that all the lights that were called for by the shipbuilding company were furnished, and that no request was ever made to any officer of the ship for more lights, and no complaint was ever made of lack of lights, or failure of lights.   Indeed, there seems to be no dispute that all the lights which had been called for were burning immediately before and after the accident, and that they went out from some unexplained cause just before the workmen were ordered to go down.   Even then no notice was given by the shipbuilding company to any officer of the ship that the lights had failed, and no request was made for other lights.   It was evident negligence for the shipbuilding company to direct its employés to proceed with the work in the darkness at a place where its representative knew there was an open hatch.   The ship is acquitted of any negligence with respect to the lights, because it was given no notice of the failure of the lights and no opportunity to repair them.

But as between the ship and the shipbuilding company the primary liability is on the ship for leaving the hatch unguarded.   The shipbuilding company under its contract had nothing to do with the management of the hatches, and it was the duty of the ship's master to see

that they were properly guarded, knowing that the employés of the shipbuilding company were working around them both day and night. It is true that it was necessary to keep the hatches open for the preservation of the cargo of cotton, but there were stanchions around the hatches, and a rope near by, which could have been attached to the stanchions, thus making the place entirely safe. No protection of this sort was used.

[3] The ship undertakes to discharge itself of the duty to keep the hatch protected by saying that it had given complete charge of the hatches to the shipping company, which was unloading the cotton, and that its employés had left the hatch open. This defense is unavailing. When the ship contracted with the shipbuilding company for the repairs, it assumed the obligation to keep all parts of the ship under its control reasonably safe for the employés of the shipbuilding company. It could not relieve itself of the duty by delegating it to the shipping company. Chicago City v. Robbins, 2 Black, 418, 17 L. Ed. 298; Id., 4 Wall. 657, 18 L. Ed. 427; Maryland Dredging etc., Co. v. State of Maryland (C. C. A.) 262 Fed. 11; Cramblitt v. Percival-Porter Co., 162 Iowa, 283, 144 N. W. 23; Scoggins v. Atlantic & Gulf Portland Cement Co., 179 Ala. 213, 60 South. 175; City & Suburban Railway Co. v. Moores, 80 Md. 348, 30 Atl. 643, 45 Am. St. Rep. 345; Thomas v. Hammer Lumber Co., 153 N. C. 351, 69 S. E. 275, 32 L. R. A. (N. S.) 584; Strickland v. Montgomery Lumber Co., 171 N. C. 755, 88 S. E. 340; 26 Cyc. 1562.

[4] There was abundant basis in the testimony for the rejection by the District Court of the defense of assumption of risk. Lane was a carpenter, with no experience on ships. The testimony of Adams that he expressly warned the workmen to look out for the hatch was contradicted by the libelant and other witnesses, and there was no testimony that this inexperienced workman was informed of the precise location of the hatch, so that he could appreciate the danger. The risks not naturally incident to the occupation, but arising out of the master's negligence, "the employé is not treated as assuming, until he becomes aware of the defect or disrepair, and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them." Seaboard Air Line v. Horton, 233 U. S. 492, 504, 34 Sup. Ct. 635, 640 (58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Gila Valley, etc., Ry. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521; Waldron v. Director General of Railroads (C. C. A.) 266 Fed. 196.

The defense of contributory negligence was not conclusively made out by the fact that Lane would not have fallen, if he had not taken a few steps at the foot of the stairway or ladder, for the same reason, namely, that there was testimony that he was not warned of the open hatch, and no testimony that he was informed of its precise location.

We find that the proximate causes of the accident were the negligence of the shipbuilding company in not furnishing its employé a safe place to work, and the negligence of the ship in not having the hatch guarded as its duty to the shipbuilding company and its employés re-

quired. The decree of this court will be entered, directing the decree of the District Court to be modified accordingly.

Modified.