## THE WEST ISON.

### FOUNTAIN v. UNITED STATES et al.

(District Court, W. D. Washington. N. D. May 29, 1924.)

#### No. 8238.

1. **Shipping** ⊚⇒84(3)—**Duty of ship ends when it furnishes stevedore safe place to work.**

Duty of ship ends when it furnishes stevedore safe place in which to work and a safe passage thereto, but defective construction invokes a different rule.

2. **Shipping** ⊚⇒84(3)—**Ship charged with responsibility for furnishing covers for manhole suitable for purposes.**

Ship is charged with responsibility for furnishing covers for manholes suitable for purposes for which they are to be used, and is not absolved from duty of reasonable care for safety of stevedore invited on ship.

3. **Shipping** ⊚⇒84(1)—**Stevedore, employed by stevedore company, an invitee on ship.**

A stevedore, employed by a stevedore company with whom ship has contract to load cargo on ship, is there by invitation, and ship must be reasonably sure not to invite such employee into danger.

4. **Shipping** ⊚⇒84(3)—**Having manhole covers back to back not defective construction.**

That manhole covers opened back to back, so that, if both of them were open at same time, one of them might fall on person entering one manhole was not defective construction, which would make ship liable for injury to stevedore.

5. **Damages** ⊚⇒132(8)—**Stevedore disabled five month by loss of ends of fingers, operation being necessary, entitled to $1,750.**

An efficient stevedore, earning $150 per month, who was out of employment for five months by reason of loss of ends of fingers, further operation on finger being necessary at expense of $100, *held* entitled to $1,750 from stevedore company.

In Admiralty. Libel by Joseph Fountain against the United States, as owner of the steamship West Ison, a merchant vessel, and another. Decree for libelant.

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

James R. Gates, of Seattle, Wash., for libelant.

Bronson, Robinson & Jones, of Seattle, Wash., for the United States.

Theodore B. Bruener, of Aberdeen, Wash., for respondent* Grays Harbor Stevedore Co.

NETERER, District Judge. The libelant seeks to recover for personal injuries sustained while a stevedore in the employ of the Grays Harbor Stevedore Company, a corporation, engaged in loading the ship West Ison, lying in port at Aberdeen, Wash. The libel is brought against the United States, the owner, and the stevedore company.

Libelant was one of a gang engaged in loading the West Ison. The ship had been delivered to the stevedore company on arrival in port. The manhole covers to the hatches were down. The manholes leading to holds 4 and 5 are placed near each other. The covers of each manhole open over the other manhole. The libelant charges negligence, in that no permanent or fixed hooks or fastenings were attached to the manhole covers—"that in the absence of permanent fastenings attached to the covers and installed by the ship said covers could have been fastened in the exercise of ordinary care by means of a rope or some simple device."

From the testimony it must be concluded that the covers to both manholes were raised and set "back to back." This placed the covers at an angle of approximately 65° or 70°, judging from the testimony. No wedges were placed, nor were the covers fastened to the "gooseneck" above by means of ropes, or secured in any fashion. The libelant did not know that these covers were not fastened, and in descending the ladder, his right hand being placed on the top edge of the manhole, one of the covers fell and crushed the ends of the fingers of said right hand. The two middle fingers were amputated just forward of the medial interphalangeal joint. The index finger was amputated near the first or distal interphalangeal joint. A small piece of bone was detached from the distal phalangeal bone of the little finger, and is now embedded in the fleshy part, causing the libelant pain, and will require an operation to be relieved. There was rope upon the ship by which the covers could have been secured, and wedges could have been used to prevent the cover from falling upon the hand of libelant.

[1-4] The duty of the ship ends when it furnishes to the stevedores a safe place in which to work and a safe passage thereto. The Saranac (D. C.) 132 Fed. at page 938; The Kongosan Maru (D. C.) 282 Fed. 666. Defective construction, however, invokes a different rule. The ship is charged with responsibility for furnishing covers for the manholes suitable for the purposes for which they are to be used, and is not absolved from the duty of reasonable care for the safety of a stevedore invited upon the ship. A stevedore, employed by a stevedore company with whom the ship has a contract to load cargo on the ship is there by invitation, and the ship must be reasonably sure not to invite such employee into danger. Bennett v. R. R. Co., 102 U. S. 577, 26 L. Ed. 235.

In the instant case there was no faulty construction of the manhole or the cover. While the covers could have been made to open otherwise, such fact does not make the manner of construction faulty. The manholes were closed when the ship was delivered to the stevedore company. There was no hidden defect or danger. The ship was in a safe condition. It is the manner of use of the cover which invited danger. Used singly there was no danger, because the cover would lie flat on the other cover, but used together, in pairs, the covers resting "back to back," danger became imminent, and when thus used it was the duty of the respondent stevedore company to see that they were made safe by the use of the wedges which were furnished by the ship, or otherwise, before inviting the libelant to enter. Respondent company knew that wedges or rope could be secured from the ship, if they were not at hand.

Each case of this character rests on its own facts. In The Truro (D. C.) 31 Fed. 158, the ladder furnished was unsafe and calculated to inflict bodily harm. McDonough v. Int. Nav. Co. (D.C.) 249 Fed. 248, and The Montrose, 186 Fed. 156, 108 C. C. A. 337, are distinguished in like manner. In The William Branfoot, 52 Fed. 390, 3 C. C. A. 155, the hoisting of cargo was so carelessly managed that the iron tubs used struck against a stanchion and wrenched it from its fastenings; the stevedore injured as a result thereof being employed by the ship. The Clan Graham (D. C.) 163 Fed. 961, was determined by the negligence of a fellow servant by insufficiently lighting the place where the work was done, the candles having been furnished by the ship. In Hamburg-American S. P. Co. v. Baker, 185 Fed. 70, 107 C. C. A. 290, the cross-beam on which the fore and after portion of the hatch was set was sprung, allowing the end to slip off. Pioneer S. S. Co. v. McCann, 170 Fed. 873, 96 C. C. A. 49: Injury was occasioned by falling dunnage and plank, "which had been stowed by the crew." The Rheola (C. C.) 19 Fed. 926: "A chain carrying a tub furnished by the ship broke." The Joseph B. Thomas, 86 Fed. 659, 30 C. C. A. 333, 46 L. R. A. 58: A keg was placed in a dangerous position by an employee of the ship. Conley v. Con. Coastwise Co. (D. C.) 242 Fed. 591: Contrary to the custom to replace hatch covers immediately after cargo is taken out, which custom was known to libelant, the hatch was left open and libelant went on deck, believing from his experience and knowledge that the covers had been placed on the hatches, and fell. The Omsk (C. C. A.) 266 Fed. 200: Omission to place rope around the open hatches to make them safe. The Marshall (C. C. A.) 294 Fed. 824, was decided upon the doctrine of res ipsa loquitur. In The West Kader (C. C. A.) 289 Fed. 774, it was held that a ship was liable, for injury to a stevedore employed by a stevedore company, only for unseaworthiness of the vessel, and also held a stevedore company not liable for injury caused by negligence of a fellow servant.

[5] The libelant is entitled to recover from the respondent Grays Harbor Stevedore Company. He was an efficient worker; earned, according to the testimony, $150 per month. He was out of employment for five months. A further operation on the little finger will be necessary, at an expense of $100, and libelant will be unable to work

for two or three weeks, all as shown by the testimony. The loss of the ends of the fingers will interfere with his work as stevedore to some limited extent in the handling of particular cargo. For the loss of time and ends of fingers, pain, etc., and further operation, I think $1,750 a reasonable sum for the respondent company to pay.

Decree accordingly.