# Montgomery St. Ry. Co. v. Smith.

*Action for Damages for Personal Injuries.*

(Decided Dec. 21, 1905.  39 So. Rep. 757.)

1. *Pleading; Complaint; Disjunctive Averments.*—A complaint containing several counts, all of which allege the same negligent act or omission, but some of which attribute the negligent act or omission to one cause, and the others to another cause, do not state two causes of action, and is not demurrable as stating disjunctively two causes of action.

2. *Master and Servant; Independant Contractor; Actions; Evidence.* Where the suit was for injuries sustained by falling into an excavation made on defendant's track, and the defense set up was that the work was done by an independent contractor and under the supervision of the city engineer, it is permissible for plaintiff to show that the general manager of the defendant company applied to the city engineer for a permit to do the work of excavating.

3. *Street Railroads; Defect in Streets; Negligence; City Ordinance; Effect.*—The fact that the city ordinances require a street railroad to keep that part of the street over which its tracks pass, between said rails and for two feet on either side in good repair, does not render the street railroad less liable for negligence in leaving excavations made by it in such part of a street without the usual safeguards, but, in fact, renders it all the more liable for such negligence.

4. *Street Railroads; Repair; City Ordinances; Construction of.*— A city ordinance requiring a street railroad to keep the streets in good repair, between the rails, and two feet on either side thereof, over which its tracks pass, within the city limits, includes tracks to be laid, as well as those already laid.

[Montgomery St. Ry. Co. v. Smith.]

5. *Same; Taking Possession of Streets; Duty to Public.*—Irrespective of ordinances, where a street railroad takes possession of parts of streets for the construction and operation of its railroad, it assumes the duty to the public to keep such parts of such streets occupied by it free from pitfalls and in safe condition.

6. *Master and Servant; Independent Contractor; Negligence; Liability of Employer.*—The principal is liable for the acts of an independent contractor employed by him, where the work to be done is intrinsically dangerous, however skillfully performed, or where the employer owes certain duties to the public or to third persons.

7. *Trial; Instruction; Province of the Court.*—It is proper to refuse an instruction that there is no evidence of an permanent injury suffered on account of the fall testified about, as it is not the province of the court to declare to the jury that there was no evidence of any particular fact.

8. *Same; Instructions; Confusing or Misleading.*—It is not error to refuse written instructions that are confusing or misleading in their tendencies, such as changes 1 and 16 and 21 requested by defendant.

9. *Same; Abstract Charges.*—Charges asked based upon assumptions of fact of which there is no evidence, are abstract and properly refused, as being so, such as charges 19 and 22 requested by defendant.

10. *Street Railroads; Obstruction in Street; Liability.*—The railroad company was not relieved from the duty resting upon it to keep such part of the street in a safe condition as it occupied with its track, by the fact that the city engineer is overlooking the work being done by it on such streets.

11. *Damages; Expenses Incurred; Husband and Wife; Presumptions.* In the absence of evidence as to whom credit was given, the presumption is that it was given to the husband, and in an action by a married woman for injuries received, medical attention not paid for by her, and not shown to be charged to her, was not a proper element of damage.

12. *Municipal Corporations; Obstruction in Streets; Duty of Traveller.*—While there is no duty resting on a traveller to ascertain whether or not the way is clear, and he may indulge the presumption that it is clear, yet if he has knowledge of an obstruction, or has reason to believe that such exists, he must, on approaching such place, look for same, and use ordinary care to avoid injury from same.

[Montgomery St. Ry. Co. v. Smith.]

APPEAL from Montgomery City Court.

Heard before HON. A. D. SAYRE.

This was a suit for damages sustained by appellee on account of the alleged negligence of the appellant in leaving a hole or ditch open and unguarded on one of the public streets of Montgomery, into which appellee, while crossing the street, fell and sustained injuries complained of. The original complaint contained six counts. The first count alleges that appellant, through and by its servants and agents, excavated its track or dug a ditch or hole in the street at the intersection of Washington and Bainbridge streets in the city of Montgomery; that said streets were public highways in the city of Montgomery; and that, while walking along or across said public highway at a point where Washington crosses Bainbridge street, she fell into said excavation or ditch and was greatly bruised and injured; that her injuries were suffered in consequence of the negligence of defendant, or its servants or agents, in leaving said ditch or hole without barricades or without such other means as are usual and proper to guard the public at night from falling into said excavation while passing along said street. Demurrers were sustained to the second count, and it went out. The third count contained practically the same allegations as to the nature and cause of the injury as the first count. Demurrers were sustained to the fourth count, and it went out. Demurrers were sustained to the fifth count, and it went out. The sixth count made the same allegations as to the character of injury received and the manner in which it was received, and averred that the negligence of the defendant or its servant or agent consisted in leaving said ditch or excavation open without a light or other things to give warning thereof.

The complaint was afterwards amended by adding the seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth counts. The court gave the affirmative charge for the defendant as to the seventh,

ninth, and twelfth counts. The eighth count alleged the duty on appellant, as the operator of the street railway over the streets of Montgomery and at the point mentioned at the crossing of Washington and Bainbridge streets, to keep the part of the street occupied by its track in a reasonably safe state of repair for the safe passage of travelers over it, and alleged a negligent disregard of this duty by permitting an excavation or ditch to remain in the same unguarded, without lights or other things to give warning thereof. The tenth count alleges the duty of appellant to keep the part of the street over which its said track ran in safe repair for the passage of travelers over it, and a disregard of that duty by excavating the same and leaving the excavation and negligently failing to put up signals or lights upon said excavation. Count 11 is practically the same as the tenth count. The thirteenth count alleges the duty on defendant to keep the street occupied by its tracks in reasonable repair for the safe passage of travelers over it, and that a contractor, who was constructing or repairing said track for defendant, made an excavation and negligently left it open at night, without proper lights or safeguards. The fourteenth count sets forth an ordinance of the city of Montgomery which requires any street railway company, operating any line of street railway within the corporate limits of the city of Montgomery or within the police jurisdiction thereof, to make said track conform to the grade of the streets where laid, and to keep in good repair all that part of the street occupied by said rails and tracks and for two feet on either side of said track; averring that the defendant operated a street railway and had a track extending from Bainbridge street to Washington street, in the city of Montgomery, and alleging the duty of appellant to keep said streets so occupied by its tracks and the two feet on either side thereof in reasonable repair, and alleging that said tracks and the street two feet on either side thereof were out of repair by reason of a deep hole, ditch, or gully,

which had been negligently left open by defendant without proper guards, lights, or covering, and that appellee fell in and was injured. Count 15 sets up an ordinance granting the right, privilege, power and authority to appellant to operate and maintain an additional track on South Bainbridge street, in the city of Montgomery, and setting up the further fact that this right and power was subject to all the conditions, requirements, limitaions, and regulations under which said street railway is now operating and subject to any ordinance of the city of Montgomery now in existence or which may hereafter be adopted regulating the operation of street railways in said city, and averring that at the time of the approval of said ordinance there was another ordinance of the city of Montgemery in full force and effect, setting out the ordinance set out in the fourteenth count and alleging the same breach of duty and negligence as alleged in count. 14. There was demurrer to all of these counts, specifying many and various grounds of demurrer. The demurrers were sustained as to counts 2, 4, and 5 of the original complaint, and overruled as to the others.

It was shown that the witness Ford was city engineer. He was asked by the plaintiff "Who got the permit to do this work for the city?" He answered: "Mr. Semmes and Mr. Scott applied for a permit to fix the street. They did not state that the permit was for the Montgomery Street Railway. Mr. Semmes was its manager at that time. I do not know what position Mr. Scott occupied."

The court in its oral charge to the jury said: "Ordinarily an independent contractor, in the prosecution of the work secured by the contract between him and the employer, being guilty of negligence, the employer is not responsible for it. But there is a very important modification of that proposition, which in my judgment, as a matter of law, takes it entirely out of this case; that is to say, that, if the work to be done is one which in its nature is intrinsically or necessarily accompanied with

danger, then the employer cannot put himself behind his independent contractor. In a case of that sort, the employer and the independent contractor are both equally responsible, and the person injured under these circumstances has a right to sue one or the other, just as he pleases, or to sue both of them if he pleases, and, upon establishing his case to the reasonable satisfaction of the jury, would be entitled to a verdict." Further charging the jury orally, the court said: "It was the duty of this defendant, whether that duty arose out of some rule at common law, or whether out of some statutory enactment of the city council of Montgomery, it makes no difference, the duty was the same; and it was the duty of this defendant, if it was operating and using that railroad track there in a public highway, to keep so much of the highway as lay under and between its track in safe condition of repair." Further charging the jury, the court said: "I had something to say to you about this question of independent contractor, and I stated certain propositions, having in mind the idea that certain charges would be requested; but I find they have not been. I want to modify all that I have said to you in regard to that question in this way: I state to you now that if the work required to be done in the repair and rebuilding of this road was intrinsically or necessarily accompanied by danger to pedestrians, if left ungaurded or unlighted or without signals at night, if you shall be satisfied from the evidence that that is the case, then this defendant cannot escape liability on the ground that its agent in the rebuilding or repairing of that railroad was an independent contractor. Now, whether or not this excavation required by this work was of that sort or not, under the conditions which I have named, it is a question of fact which in the present state of this case I submit to you for your determination."

To defendant charges were refused as follows:

Charge 1: "The court charges the jury that if the plaintiff, on approaching the place where she sustained

20

her injury, if there was anything, such as debris, lumber, timber, piles of dirt, etc., such as was reasonable calculated to give warning that the earth had been excavated at that point it was then her duty to be on the lookout to detect and avoid any such excavation, and if she failed to do this, and thereby contributed to her injury she cannot recover."

Charge 2 was the general affirmative charge. Charge 3, affirmative charge as to fourth count. Charge 4, affirmative charge as to sixth count. Charge 5 was the affirmative charge as to the eighth count. Charge 7 was the affirmative charge as to the tenth count. Charge 8 was the affirmative charge as to the eleventh count. Charge 10, affirmative charge as to the thirteenth count. Charge 11 was the affirmative charge as to the fifteenth count. Charge 14, general affirmative charge. Charge 15, affirmative charge as to third count. Charge 17, affirmative charge as to the first count.

Charge 6: "There is no evidence in this case that plaintiff suffered any permanent injury on account of the fall testified about."

"Charge 13: "The court charges the jury that, if they are reasonably satisfied from the evidence that the work of constructing the street railway track at the intersection of Bainbridge and Washington streets was done under the supervision and direction of the city engineer, then the defendant would not be liable for any injury suffered by the plaintiff on account of the injuries alleged in the complaint."

Charge 16: "When I charge you that the plaintiff did or failed to do anything which contributed to her injury, I do not mean that what she might have done or failed to do was the sole cause of her injury. It would be sufficient, if such conduct on her part merely contributed to her injury, to prevent a recovery in her case."

Charge 18: "The court charges the jury that while a foot traveler upon the sidewalks or upon crosswalks provided for them, if they go off the sidewalks or cross-

walks for foot travelers, it is their duty to use reasonable care to see that the way is clear."

Charge 19: "The court charges the jury that if they are reasonably satisfied from the evidence that lights were placed at or near the place where the injury occurred, by Timberlake or any of his laborers, on the evening of May 17, 1903, before the injury occurred, and that they were put out thereafter by some person unknown to the defendant, and not connected with the defendant, before the injury occurred, then the defendant would not be liable."

Charge 20: "The court charges the jury that if they are reasonably satisfied from the evidence that the work of constructing the track at the intersection of Bainbridge and Washington streets was done by one Timberlake under an independent contract with the Montgomery Street Railway, and that under said contract the Montgomery Street Railway had no right or authority to direct the manner of the work, or to hire or discharge the laborer, or to do anything except to inspect and pay for the work when completed, then the jury should find the verdict for the defendant."

Charge 21: "The court charges the jury that the plaintiff, while walking along the sidewalk on Bainbridge street, had the right to assume that the sidewalk was safe; but when she stepped off the sidewalk into the street in Washington street, it became her duty to use ordinary care to look and see that the street was clear and safe."

Charge 22: "The court charges the jury that it is the duty of any person walking along the highway to use ordinary care to ascertain whether or not the way is clear."

Charge 23: "The court charges the jury that if they believe the evidence the plaintiff is not entitled to recover anything for doctor's bill or medical attendance."

Charge 24: "The court charges the jury that the work of constructing the track of defendant company at the

place testified about was not in itself intrinsically dangerous.

Charge 25: "The court charges the jury that if there was sufficient light, from the street lights or otherwise, so that any dangerous or unsafe excavation in the street at the intersection of Washington and Bainbridge streets would have been revealed by said lights, and they shall believe from the evidence that Mrs. Smith knew the place in question or had reason to believe that it did exist, then it was her duty under the law to be on the lookout to watch, to detect it and avoid it, and if she failed so to do and thereby contributed to her injury, she cannot recover."

There was judgment for the plaintiff in the sum of $858.

STEINER, CRUM & WEIL, for appellant.—No brief came to the reporter.

HILL, HILL & WHITING, for appellee.—No brief came to the reporter.

SIMPSON, J.—This was a suit brought by the appellee against the appellant for damages claimed to have resulted from injuries received by her in falling into an excavation which had been made upon one of the streets of Montgomery in the work of changing the tracks of appellant. The demurrers to counts 1, 3, 6, 8, 10, 11, 13, 14, and 15 were properly overruled. Said counts do not charge disjunctively two causes of action.—*Highland Avenue & Belt Ry. Co. v. Miller*, 120 Ala. 535, 24 South. 955. Nor were said counts liable to the further objection that the city ordinance could not create a civil right based on negligence of one failing to obey it. The fact that the city required the defendant to keep the street in repair did not make it any the less liable for negligence in leaving an excavation without the usual safeguards.

[Montgomery St. Ry. Co. v. Smith.]

The question to the witness Ford as to who got the permission to make the excavation, and the answer thereto, were properly admitted, as it was a proper circumstance to go to the jury, in order to determine whether the defendant was the party having the work done; and, while the answer may not prove the fact conclusively, it was proper evidence for the jury. Semmes being stated to be the general manager of the defendant company, and the witness stating that he did not know what position Scott occupied, the evidence as to Semmes was clearly admissible, and he could not answer the question without including Scott.

There was no error in admitting the city ordinance in evidence.—*Elyton Land Co. v. Mingea,* 89 Ala. 522, 530, 7 South. 666. On the same authority we hold that there was no error in permitting the introduction of section 767 of the city code. The ordinance was sufficiently proved.—Code Ala. 1896, § 1822. It cannot be said that this ordinance related only to the tracks already laid and being operated, and not to additional tracks to be laid. Whenever the street car company took possession of that portion of the street for the purpose of laying a track, it was "occupied by it;" and, even if so strict a construction as the appellant contends for could be adopted, the evidence in this case shows that the crossties and tracks were laid at the point where complainant fell, and, irrespective of the ordinance, when a street railway company takes possession of a portion of the street for the purpose of building and operating a railway under a franchise, it necessarily assumes the duty to the public to keep that part of the street occupied by it free from pitfalls, in such condition as not to be dangerous to the traveling public.—27 Am. & Eng. Ency. Law (2d Ed.) p. 39; Nellis, Street Railway Accident Law, p. 490; Nellis, Street Surface Railways, p. 260; Id. p. 263, § 15.

The cases referred to in the latter part of the opinion in the case of *North Birmingham Railway Co. v. Calder-*

*wood*, 89 Ala. 256, 7 South. 360, 18 Am. St. Rep. 105, to the effect that a city ordinance will not be permitted tô create a civil right in favor of third persons, based on the evidence of one failing to obey it, has no application to the present case. Those were cases based on a city ordinance requiring parties to remove snow from the sidewalk abutting their premises, and the reason given for nonliability was that the defendant had no agency in placing the snow there and the requirements of the ordinance were merely to force the property owner to perform a duty which devolved on the city itself, and authorized the city to do it at his expense if he failed. The distinction was drawn in those cases between such a case and one in which the defendant had created the nuisance himself.—*Flynn v. Canton*, 17 Am. Rep. 603, 612, 613; *Heeney v. Sprague* 23 Am. Rep. 502, 507; *Kirby v. Boylston*, 74 Am. Dec. 682. On the other hand, our own court has held that a failure to comply with the requirements of a city ordinance which is reasonable is per se negligence.—*S. & N. Ala. Ry. Co. v. Donovan*, 84 Ala. 141, 147, 4 Couth. 142. This is not a liability on the contract made with the city, but a liability for a tort committed, under the license of the contract, which has resulted in injury to another.—*Elyton Land Co. v. Mingea*, 89 Ala. 530, 7 South. 666.

That part of the oral charge marked "A," in connection with the modification of it subsequently made, was not erroneous, but for a reason a little different from that given by the court. According to the authorities there are two exceptions to the general rule as to the nonliability of the principal for the acts of an independent contractor ;the first being, as stated by the court, where the work to be done is "intrinsically dangerous, however skillfully performed," and the second, where the "employer owes certain duties to third persons or the public," in which case "he cannot relieve himself from liability, to the extent of that duty, by committing the work to a contractor."—Woods' Maser & Servant (2d Ed.) p.

616, § 316; *Mayor & Aldermen of Birmingham v. Mc-Cary,* 84 Ala. 472, 4 South. 630. See, also, the able and exhaustive discussion of this principle by Parker, C. J., in *Deming v. Terminal Ry. of Buffalo,* 169 N. Y. 1, 61 N. E. 983, 88 Am. St. Rep. 521, in which the chief justice states that a railroad company, "having accepted the privileges and benefits conferred upon it, * * * necessarily took with them all the obligations and liabilities in respect to the highway which its absolute dominion over it for the purpose of carrying it across the railroad track made necessary, among which was the duty of so guarding the obstructions to the highway which were made under its direction as to save passers-by from injury." As before stated, in the case now before the court the defendant owed a duty to the public to keep the part of the street occupied by it in a safe condiion, and it could not escape liability by committing the work to a contractor. This principle differentiates this case from that of *Chattahoochee & Gulf Ry. v. Behrman,* 136 Ala. 508, 35 South. 132, where the injury was to a private lot, and also from the case of *Massey v. Oates,* (Ala.) 39 South. 142, where the owner was a private citizen owing no special duty to the public to keep the street in repair. In that case, also, McClellan, C. J., in referring to the first exception, draws a distinction between a case like that, where the injury resulted, not from doing of the thing which the contractor had been employed to do, and a case like this, where injury resulted from the thing which the contractor had been employed to do, to-wit, to dig the excavation in the street. —*Massey v. Oates, supra.*

Charge 1, requested by the defendant, was properly refused. It was confusing. There was no error in refusing to give the general charge requested by the defendant. From what has been said as to the liability of the defendant to keep the place in question in safe condition, the affirmative charge, requested as to counts 1, 3, 6, 8, 10, 11, 13, 16 and 15, respectively, were prop-

erly refused.   Under the principles declared the contractor was the agent of the defendant.

Charge 6, requested by defendant, was properly refused.   The court cannot be required to declare to the jury that there was no evidence of a particular fact.— *Jefferson v. State,* 110 Ala. 89, 92, 20 South. 434.

Charge 13, requested by defendant, was properly refused.   The fact that the city engineer might have been looking after the work did not release the defendant from the duty resting upon it to keep that part of the street in safe condition.

Charge 16, requested by the defendant, was properly refused.   It was calculated to confuse the jury.   It was liable to the construction that the court had charged them that the plaintiff had done or had failed to do something which contributed to her injury.

Charge 18 was properly refused.   It was abstract, because the evidence was not contradicted that the plaintiff was crossing the street at a regular crossing when the accident occurred.

Charge 19 was properly refused.   There was no evidence tending to show that any light had been placed at the place that evening, or that any one had extinguished any of them.   The man whom Timberlake said he had employed to put lights on the work generally was not produced.   Timberlake himself could not say they were there, and if they had been there and extinguished the lanterns still would have been there.   The charge was abstract.

Charge 20 was properly refused, as the principle referred to does not apply where the duty rests on the defendant to keep the place in a safe condition, as heretofore shown.

Charge 21 was properly refused for the reason given as to charge 18, and because it was calculated to mislead the jury by making the impression that greater care was required when off the sidewalk than when on it.   "The doctrine of heedlessness and inattention, as generally

understood, by neglect to use reasonable care, does not arise when a person has the legal right to presume that he may proceed with safety, and no facts or circumstances are brought to his notice calculated to excite attention or care. A person traveling on the sidewalk of a municipal corporation in daytime is not required to be on the lookout for obstructions, nor is he required to feel his way at night. He may assume that they are in proper condition for public travel."—*Mayor & Aldermen of Birmingham v. Tayloe*, 105 Ala. 178, 16 South. 576.

Charge 22, requested by the defendant, was properly refused for the same reason. As shown by said authority, it is not the duty of a traveler to "ascertain whether or not the way is clear," though it is his duty after ascertaining that there is an obstruction, to exercise ordinary care to avoid injury.

Charge 23 should have been given. The evidence does not show whether the credit was given to the husband or to the wife, and in the absence of proof the presumption is that the credit was given to the husband.

Charge 25, requested by defendant, should have been given. If the plaintiff knew of the dangerous excavation in the street, or had reason to believe that it existed, it was her duty, on approaching the place, to look for it and avoid it.

The judgment of the court is reversed, and the cause remanded.

HARALSON, TYSON, and ANDERSON, JJ., concur.